UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| STEPHAN DARRELL WILLIAMSON,<br><br>　　　　　　　　Plaintiff<br><br>　　v.<br><br>LAS VEGAS POLICE DEPARTMENT *et al.*,<br><br>　　　　　　　　Defendants | Case No. 2:21-cv-02136-CDS-DJA<br><br>SCREENING ORDER |

Plaintiff Stephan Darrell Williamson, who was formerly incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983, and has filed an application to proceed *in forma pauperis.* (ECF Nos. 1-1, 4). The Court now screens Plaintiff's civil rights complaint under 28 U.S.C. § 1915A.

**I.    SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which

relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint.  When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.   SCREENING OF COMPLAINT

In the complaint, Plaintiff sues multiple Defendants for events that took place while Plaintiff was detained by the Las Vegas Police Department and subsequently incarcerated by NDOC. ECF No. 1-1 at 1. Plaintiff sues Defendants Las Vegas Police Department, Clark County Detention Center, AFIS-Criminal Justice Information Division of the FBI Headquarters, Lakes Crossing, and NDOC. *Id.* Plaintiff brings one count and seeks monetary relief. *Id.* at 1-12.

The complaint alleges the following: On March 3, 2017, Plaintiff was arrested in Las Vegas. *Id.* at 1. The arresting officers somehow mixed-up Plaintiff's identification with someone else's. *Id.* at 2. Plaintiff, whose name is Stephan Darrell Williamson, was booked under the name Jerry Dennard Holloway. *Id.* Plaintiff attempted to make officers aware of the mix-up, but he was placed into a psychiatric patient holding cell and told that he is now Jerry Holloway. *Id.* Plaintiff's fingerprints were taken, but the AFIS fingerprint machine failed to identify his fingerprints, even though his fingerprints were in the system from a prison term in Arizona. *Id.* at 2-3.

Plaintiff was transported to Clark County Detention Center, and he spent several months there while attending court hearings. *Id.* at 4. No one believed that Plaintiff was Stephan Darrell Williamson. *Id.* The judge ordered that Plaintiff undergo a mental health evaluation, and he was taken to a private airport and transported by a private jet to Lake's Crossing, where he was admitted under the name Jerry Holloway. *Id.* at 4-5. Plaintiff was given various psychiatric medications and came to believe that he was Jerry Holloway. *Id.* at 5.

Plaintiff's mother sent Lake's Crossing documents proving that he was Stephan Williamson, not Jerry Holloway, and Lake's Crossing immediately had him transported by

private plane back to Clark County Detention Center. *Id.* at 6. Stephan Williamson then hired a new lawyer who provided the judge documents proving that he was Stephan Williamson. *Id.* But the judge simply said, "The paperwork has already been started and filed so as long as Stephan Darrell Williamson is in the Nevada Department of Corrections his name will be Jerry Dennard Holloway." *Id.* at 6-7.

The judge did not provide any further explanation and sentenced Plaintiff to 60 months imprisonment under the name Jerry Holloway. *Id.* at 7. Stephan Williamson was added to Plaintiff's prison file as a pseudonym, apparently in an attempt to cover up the issue. *Id.* at 7-8. Plaintiff completed his term of imprisonment and was released about three years later. *Id.* at 8-9.

Since Plaintiff's release, he has been diagnosed with multiple psychiatric mental health disorders and is undergoing mental health treatment. *Id.* at 9. Plaintiff believes that the mistaken identity led to a wrongful conviction and imprisonment. *Id.* Jerry Holloway is a much older man in his 60s and looks nothing like Plaintiff. *Id.*

Based on these allegations, Plaintiff claims that his rights under the Fifth, Eighth, and Fourteenth Amendments were violated, and that he is entitled to compensation under 28 U.S.C. § 2513, as well as Nevada Statutes. The Court will consider Plaintiff's claims in turn.

A. **Federal Claims**

28 U.S.C. § 2513 provides the standard for bringing a claim of unjust conviction and imprisonment for an offense against the United States under 28 U.S.C. § 1495.[1] Plaintiff does not articulate the specific claims that he is bringing under the Fifth, Eighth, and Fourteenth, but based on the allegations in the complaint, it appears that any claims are based on an allegedly unconstitutional conviction and imprisonment.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that "in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal,

---

[1] Although it does not affect my analysis, I note that Plaintiff was not convicted or imprisoned for a crime against the United States. Rather, he was convicted and imprisoned under the laws of the State of Nevada.

4

expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id*. at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has not been . . . invalidated is not cognizable under § 1983." *Id*. at 487. "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*.

Plaintiff claims that he was wrongfully convicted and imprisoned. Such a claim must be brought in a petition for habeas corpus. The Court acknowledges that, if it were to dismiss this case and direct Plaintiff to file a habeas corpus petition, Plaintiff could not do so because he is no longer in custody. In *Guerrero v. Gates*, the Ninth Circuit discussed exceptions to *Heck*'s bar for plaintiffs no longer in custody. 442 F.3d 697, 704 (9th Cir. 2006). The Ninth Circuit explained the following:

> Although we held in *Nonnette*[2] that the plaintiff could bring § 1983 claims despite the *Heck* bar because habeas relief was unavailable, we did so because Nonnette, unlike Cunningham, timely pursued appropriate relief from prior convictions. *Nonnette* was founded on the unfairness of barring a plaintiff's potentially legitimate constitutional claims when the individual immediately pursued relief after the incident giving rise to those claims and could not seek habeas relief only because of the shortness of his prison sentence. In reversing the district court's dismissal of Nonnette's § 1983 claims, we stated:
>
>> The fact that Nonnette has been released from the incarceration that his civil suit, if successful, would impugn, and that a habeas petition would be moot for that reason, differentiates this case from our recent decision in *Cunningham v. Gates*[3]. In *Cunningham*, the plaintiff brought a civil suit that would have impugned the conviction for which he was still incarcerated; habeas corpus was unavailable

---
[2] *Nonnette v. Small*, 316 F.3d 872 (9th Cir. 2002).
[3] *Cunningham v. Gates*, 312 F.3d 1148 (9th Cir. 2002), as amended on denial of reh'g (Jan. 14, 2003).

only because he had let the time for such a petition expire. Under those circumstances, we declined to take the case out of the rule of *Heck*.

Thus, a § 1983 plaintiff's timely pursuit of available habeas relief is important. Even so, we emphasized that *Nonnette*'s relief from *Heck* "affects only former prisoners challenging loss of good-time credits, revocation of parole or similar matters," not challenges to an underlying conviction such as those Guerrero brought.

We find Guerrero's situation to resemble *Cunningham* more closely than *Nonnette*. Guerrero never challenged his convictions by any means prior to filing this lawsuit. Nearly three years passed from his last encounter with the LAPD before he took any action at all. His failure timely to achieve habeas relief is self-imposed. Thus, as in *Cunningham*, though habeas relief for Guerrero may be "impossible as a matter of law," we decline to extend the relaxation of *Heck*'s requirements. Guerrero cannot now use his "failure timely to pursue habeas remedies" as a shield against the implications of *Heck*. Accordingly, we hold that *Heck* bars Guerrero's § 1983 claims of wrongful arrest, malicious prosecution, and conspiracy.

*Id.* at 705.

I find that, *Heck* bars Plaintiff's § 1983 claims. Plaintiff seeks damages based on the allegation that a case of mistaken identity led to an unconstitutional conviction and imprisonment. Based on the allegations in the complaint Plaintiff's conviction and sentence were not invalidated. To the contrary, Plaintiff specifically alleges that he served out the majority of his sentence before being released. The allegations in the complaint do not support that Plaintiff diligently pursued habeas corpus relief while incarcerated. Rather, Plaintiff brought his action for monetary damages in December 2021, almost five years after his initial arrest, and almost two years after his release.[4] Furthermore, Plaintiff seeks to invalidate his conviction, not challenge good time credits. As such, the *Nonnette* exception does not apply to this case, and *Heck* bars

---

[4] According to NDOC records, Plaintiff was released from prison on November 27, 2019.

Plaintiff's claims. Accordingly, I dismiss Plaintiff's federal claims with prejudice because they are *Heck-*barred, and amendment would be futile.

### B. State Law Claims

Plaintiff also brings claims under NRS 200.460 and NRS 200.640, which Plaintiff describes as Nevada's wrongful conviction compensation act and Nevada's wrongfully imprisoned statute. (ECF No. 1-1 at 10.) In civil actions in which federal district courts have original jurisdiction, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). But a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Because the Court has dismissed all of Plaintiff's federal claims the Court will not exercise supplemental jurisdiction over any potential state law claims. As such, the Court dismisses Plaintiff's state law claims without prejudice, but without leave to amend in this case. If Plaintiff wishes to pursue state law claims regarding his conviction and imprisonment, he must do so in state court.[5]

### III. CONCLUSION

For the forgoing reasons, it is further ordered that the Clerk of the Court file Plaintiff's complaint (ECF No. 1-1) and send Plaintiff a courtesy copy of the complaint.

It is further ordered Plaintiff's federal claims alleging that he was wrongfully convicted and imprisoned are dismissed with prejudice pursuant to *Heck v. Humphrey* because amendment would be futile.

It is further ordered that Plaintiff's state law claims are dismissed without prejudice, but without leave to amend, due to a lack of jurisdiction. Plaintiff must pursue any state law claims in state court.

It is further ordered that Plaintiff's application to proceed *in forma pauperis* (ECF No. 4) is denied as moot.

---

[5] I do not take any position as to the merits of any potential state law claims.

It is further ordered that the Court certifies that any *in forma pauperis* appeal from this order would not be taken "in good faith" under 28 U.S.C. § 1915(a)(3).

It is further ordered that the Clerk of the Court close this case and enter judgment accordingly.

DATED this 27th day of May, 2022.

_____
UNITED STATES DISTRICT JUDGE